UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MAXUM INDEMNITY COMPANY, | : | Case No. 1:13-cv-191 |
| Plaintiff, | : | |
| vs. | : | |
| DRIVE WEST INSURANCE SERVICES, INC./MULBERRY INSURANCE SERVICES, INC., *et al*., | : | Judge Timothy S. Black |
| Defendants. | : | |

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. 68), DENYING DEFENDANT NCAIG'S MOTION FOR SUMMARY JUDGMENT (Doc. 64), AND GRANTING DEFENDANT SHARP'S MOTION TO DISMISS (Doc. 81)**

This civil action is before the Court on the parties' cross-motions:  first, Defendant National Condo & Apartment Insurance Group, Inc.'s (NCAIG) Motion for Summary Judgment (Doc. 64), Plaintiff Maxum Indemnity Company's (Maxum) Response in Opposition (Doc. 73), Defendant  NCAIG's Reply (Doc. 80), and NCAIG's Notice of Supplemental Authority (Doc. 85); and second, Plaintiff Maxum's Motion for Summary Judgment (Doc. 68), Defendant NCAIG's Response in Opposition (Doc. 75), Defendant Norman-Spencer Agency Inc.'s Response in Opposition (Doc. 76), and Plaintiff's Reply (Doc. 79).  Also before the Court is Defendant Sharp (Oakwood Estates), Inc.'s Motion to Dismiss (Doc. 81), which is unopposed.

**I. Background**

This is an insurance coverage dispute in which Plaintiff Maxum Indemnity Company ("Maxum"), an insurer, seeks rescission and declaratory relief with respect to a policy it issued to Defendant Drive West Insurance Services, Inc./Mulberry Insurance Services, Inc. ("Mulberry")(Doc. 1). For purposes of Plaintiff's instant summary judgment motion, however, Plaintiff Maxum simply seeks a declaration that its policy with Mulberry does not afford coverage to the Defendants and that Plaintiff owes no obligation to Defendant National Condo and Apartment Insurance Group, Inc. ("NCAIG") or any other entity or individual in connection with the underlying actions (Doc. 68). Defendants NCAIG and Norman-Spencer Agency, Inc. ("Norman-Spencer"), in contrast, seek to establish that Plaintiff wrongly denied insurance coverage to its insured Mulberry under the policy between Plaintiff and Mulberry (Docs. 64, 76).

The policy in question was a claims-made and reported professional liability insurance policy issued by Plaintiff to Mulberry that was in effect from March 1, 2012 to October 15, 2012 (Doc. 68). Defendant Mulberry is a wholesale insurance brokerage agency that was involved in selling insurance policies on a commercial habitational insurance program. *Id*. Apparently, a "rogue" insurance agent, Michael Ward ("Ward"), sold and collected premiums for policies on behalf of Mulberry that he completely lacked authority to sell. As a result, NCAIG wired to Mulberry $457,516.62 in premium funds collected from clients who thought they were buying insurance. Mulberry purportedly bound $122,000,000 in policy limits on behalf of AIX Specialty Insurance Company ("AIX") and Swiss Re – but these entities that did not authorize Mulberry to issue

policies on their behalf. Claims and litigation ensued against Mulberry by NCAIG and Norman-Spencer, primarily accusing Mulberry of negligence and breach of fiduciary duties in collecting premiums when Mulberry had no authority to issue the policies it purported to sell.[1]

In Plaintiff Maxum's view, Exclusion J.2 in its contract with Mulberry justifies Plaintiff's denial of coverage for claims related to the premiums Mulberry collected. Such exclusion provides:

> This insurance does not apply to. . .[a]ny "claim" arising out of or resulting from any "wrongful act" . . .[y]ou had knowledge of or information related to, prior to the first inception date of the continuous claims-made coverage with us, and which may result in a "claim."

(Doc. 3, Ex.2.)

Plaintiff Maxum contends that because Mulberry received cease and desist letters from AIX and Swiss Re *before* Mulberry's policy with Maxum took effect, Mulberry had information related to wrongful acts such that any related claim would not be covered.[2]

In contrast, in Defendant NCAIG's view, none of the cease and desist letters provided knowledge of a "claim" as defined under the policy, and Mulberry had no knowledge of any potential claims by insureds or that NCAIG would seek damages from

---

[1] Defendant NCAIG's clients, including Defendant Sharp (Oakwood Estates), Inc. ("Sharp"), began filing lawsuits in 2012, alleging breach of contract, negligence and breach of fiduciary duty, seeking to impose liability against NCAIG and Norman-Spencer for "their complete failure to conduct due diligence required of the commercial insurance it sold." Exhibit H. NCAIG and Norman-Spencer filed third-party claims against Mulberry in certain of these lawsuits.

[2] In addition to the insurance companies' cease and desist letters, the Illinois Department of Insurance, after an investigation, advised Mulberry that Mulberry had issued binders of insurance that may not constitute legally valid insurance (Doc. 68).

Mulberry (Doc. 64). Defendants further argue there are uncertainties and ambiguities relative to the policy that should be construed in favor of coverage. *Id.*

The parties have filed cross-motions for summary judgment, contending there are no genuine issues of material fact. This matter is ripe for the Court's consideration.

## II.   STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

## III.  ANALYSIS

Before addressing the parties' cross motions, the Court notes that Defendant Sharp, due to settlement of a separate action, has filed an unopposed motion to dismiss

(Doc. 81).  Sharp contends it is no longer a real-party-in-interest, and therefore should be dismissed.  The Court finds Sharp's motion well-taken and hereby **GRANTS** it.

As for the cross motions, as an initial matter, the parties raise the issue of standing.  While there is no dispute any of the Defendants have standing to defend against Plaintiff's action for declaratory action, there is a dispute as to whether NCAIG has standing to assert a claim for recovery of insurance proceeds.  Plaintiff contends none of the Defendants are judgment creditors of Mulberry.  Since the time of their briefing, however, NCAIG has advised the Court (Doc. 85) that NCAIG has obtained default judgment against Mulberry in the Southern District of Ohio, in *Amwins Brokerage of Texas, Inc., et al. v. Mulberry Insurance Services, Inc. et al.*, Case No. 1:12-cv-358, (J. Beckwith).  As such, the Court finds the standing dispute resolved, and the Court will proceed to the merits.

The parties agree that there is no genuine issue of material fact  -- they simply disagree as to whom is entitled to judgment as a matter of law.  Defendants attempt to frame this matter as whether Mulberry should have had prior knowledge of actual *legal claims* as opposed to wrongdoing, whether the language "may result" mandates a subjective determination of the insured's knowledge, and whether the exclusion is ambiguous (Doc. 64).  Defendants further encourage the Court to read the exclusion in conjunction with the policy application.  *Id.*

In contrast, in Plaintiff's view, the policy language in the four corners of the agreement is adequate to resolve this matter.  (Doc. 73, citing *Potti v. Duramed Pharms.,*

5

*Inc.*, 938 F.2d 641, 647 (6th Cir. 1991)).  Plaintiff contends that Exclusion J.2, on its face, shows that any claim by Defendants related to Ward's wrongdoing is barred, because the cease and desist letters were directed to Defendant Mulberry <u>before</u> the insured time period.  *Id*.  As such, Plaintiff argues, Mulberry knew of wrongful acts that may have resulted in claims.  *Id*.

Defendant NCAIG contends that California law controls, while Plaintiff contends that the choice of law issue makes no difference inasmuch as California and Ohio law are the same on this issue of contract interpretation.  The Court agrees.   In both California and Ohio, contract terms are unambiguous where they have a plain and ordinary meaning, but are ambiguous when subject to two or more reasonable interpretations.  *See, e.g., Meridian Leasing, Inc.,* 409 F.3d 342, 346 (6th Cir. 2005) (applying California law to contract interpretation); *Mosser Construction, Inc. v. The Travelers Indemnity Co.,* 430 Fed. Appx. 417, 420 (6th Cir. 2011).

Although the briefing in this matter is voluminous, in the Court's view, the entire outcome of this dispute turns on whether Exclusion J.2 is ambiguous, or whether its language, on its face, indicates who should prevail.  The Court finds that despite Defendants' arguments to the contrary, Exclusion J.2 is clear on its face.  The claims Defendants seek to assert arise from Ward's wrongful acts of which Mulberry had related information prior to the insured time-period.   Any other interpretation of the exclusion is strained.

6

The Court therefore concludes that Plaintiff Maxum is entitled to the declaratory relief that it seeks: to wit, that Maxum owes no obligation to any entity or individual in connection with the underlying actions.  As such, Defendants' motion seeking coverage under the policy is **DENIED**.

### IV.    CONCLUSION

Having reviewed this matter, the Court finds as a matter of law that Exclusion J.2 in the contract between Plaintiff Maxum and Defendant Mulberry unambiguously denies coverage over the losses at issue in the underlying lawsuits.  Such exclusion clearly applies to claims arising from wrongful acts, about which Defendant Mulberry had notice, due to cease and desist letters that arrived prior to the insured time-period of March 1, 2012 to October 15, 2012.

Accordingly, for the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Summary Judgment (Doc. 68) and **DECLARES** that the insurance contract between Plaintiff and Mulberry does not afford coverage and Plaintiff owes no obligation under such contract to Defendants or any other entity or individual in connection with the underlying actions.  The Court further **DENIES** Defendant NCAIG's Cross-Motion for Summary Judgment (Doc. 64),  and **GRANTS** Defendant Sharp's unopposed Motion to Dismiss (Doc. 81).

The Clerk shall enter judgment accordingly, whereupon this case is **CLOSED** in this Court.

**IT IS SO ORDERED**.

Date:  2/3/15 *s/ Timothy S. Black*

Timothy S. Black
United States District Judge