UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MAXUM INDEMNITY COMPANY,

Plaintiff,

vs.

NATIONAL CONDO & APARTMENT INSURANCE GROUP, *et al.*,

Defendants.

Case No. 1:13-cv-191

Judge Timothy S. Black

**ORDER RESOLVING CROSS MOTIONS FOR SUMMARY JUDGMENT (Docs. 102, 103)**

This civil case is before the Court regarding Plaintiff/Counter Defendant Maxum Indemnity Company ("Maxum")'s motion for summary judgment on rescission (Doc. 102) as well as Defendant/Counter Plaintiff National Condo & Apartment Insurance Group ("NCAIG")'s motion for summary judgment (Doc. 103). Responsive pleadings to both motions have been filed and reviewed by the Court.

## I. BACKGROUND AND PROCEDURAL HISTORY

This case has a long history with this Court, having returned after an Order granting summary judgment in Plaintiff's favor was overturned by the Sixth Circuit Court of Appeals. In its Order, the Sixth Circuit summarized the background leading up to this civil action:

> In June 2011, Drive West Insurance Services, Inc. d/b/a Mulberry Insurance Services, Inc. ("Mulberry"), a wholesale insurance broker, contacted Defendant National Condo & Apartment Insurance Group, Inc. ("NCAIG"), a retail insurance broker, regarding a commercial real estate/habitation insurance program. Mulberry, a California corporation, and NCAIG, an Ohio corporation, entered a business relationship, whereby

Mulberry issued quotes and binders for insurance coverage to NCAIG, which NCAIG then issued to its own clients.

Although the quotes and binders issued by Mulberry to NCAIG named AIX Specialty Insurance Company ("AIX") and North American Specialty Insurance Company as the insurance carriers, those companies had never issued or approved the policies, whose policy limits amounted to well over $100,000,000. At that point, unbeknownst to NCAIG, an individual named Michael Ward, who lacked authority to sell insurance policies, was selling these insurance policies through his captive insurance company, JRSO, Inc. The insurance coverage that property owners thought they were buying simply did not exist.

By September 14, 2011, following communication from counsel for AIX, NCAIG contacted Mulberry, and learned from Mulberry of the involvement of Ward and JRSO. On September 19, 2011, counsel for AIX sent cease-and-desist letters to both Mulberry and NCAIG informing each party that AIX had no business relationship with it, and had never issued or approved any of the policies in question. While the letters demanded that the companies cease using the AIX name, neither letter threatened suit. NCAIG then contacted Ward, who described the cease-and-desist letter as a misunderstanding, and reassured NCAIG and Mulberry that he would secure another carrier for the insurance program. Ward subsequently informed NCAIG that North American Specialty/Capacity, a Swiss Re entity, would be the "front paper" for the program, and that Swiss Re would be the reinsurer, and made the same assurance to AIX counsel. Subsequent binders and quotes issued by Mulberry to NCAIG, also fraudulent, named North American Specialty Insurance Company ("North American Specialty") as the carrier. At NCAIG's request to Ward, Mulberry was removed from the insurance program in October 2011, and was replaced the following month by another wholesale broker the following month. Thereafter, Mulberry and NCAIG had little contact.

On February 10, 2012, Swiss Re sent Mulberry a cease-and-desist letter stating that, pursuant to its own internal investigation and information from the Illinois Department of Insurance, it had learned of policies issued by Ward and JRSO allegedly carried by North American Specialty, which lacked the authority of North American Specialty. The letter warned Mulberry that if Mulberry continued marketing policies allegedly issued by North American Specialty, Swiss Re would "not hesitate to take all steps necessary, including injunctive relief," but did not request monetary relief, or threaten a suit for damages. AIX sent Mulberry a second cease-and-desist letter on February 17, 2012 later stating that it had become aware that Mulberry had continued to use the AIX name, although AIX itself had never issued the policies, and that AIX would "be referring this matter to the fraud units at all appropriate Insurance Departments," but again did not

threaten legal action. The Illinois Department of Insurance sent Mulberry a letter on February 22, 2012, addressed only "Dear Producer or Consumer," informing Mulberry that it had, "or may have, been issued a binder of coverage or an insurance policy purporting to be from" AIX or North American Specialty which may not be legally valid. The letter stated that the Department of Insurance would "seek appropriate regulatory relief for affected parties" and that the Offices of the Special Deputy Receiver had identified and seized monies that may have been intended as premium payments, but did not suggest legal action against Mulberry itself.

Meanwhile, Mulberry had applied for professional errors and omissions liability coverage through Maxum Indemnity Corporation ("Maxum"), a Delaware corporation with its principal place of business in Georgia, on January 31, 2012. In response to Question 12(C), which asked if the Applicant had "any knowledge of any potential errors or omissions claim(s)," Mulberry checked "No." Maxum issued professional liability insurance policy PFP 6018512-01 (the "Policy") to Mulberry; coverage began March 1, 2012. The exclusions section of the Policy provided, in relevant part:

> This insurance does not apply to:
>
> J. Any "claim" arising out of or resulting from any "wrongful act" or "personal/advertising injury",
>
> (1) Disclosed in your application of insurance or any accompanying documents provided to us; or
>
> (2) You had knowledge of or information related to, prior to the first inception date of the continuous claims-made coverage with us, and which may result in a "claim".

Under the Policy, a "wrongful act" was "any actual or alleged negligent act, error or omission in the rendering or failure to render 'professional services'." The Policy defined "claim," in turn, as a "written or verbal demand received by any 'insured' for money or services, including notice of service" of a civil proceeding for monetary damages or "institution of any administrative, judicial, arbitration or alternative dispute proceedings against any 'insured'." The scope of its duty to defend, pursuant to coverage section 1(A), was as follows:

> We will have the right and duty to defend any "insured" against any "suit" seeking those "damages". However, we will have no duty to defend an "insured" against any "suit"

> seeking "damages" for a "wrongful act" to which this insurance does not apply.

The policy did not include a choice of law.

In Spring 2012, upon becoming aware of the lack of valid insurance for their property, some of the property owners filed suit against NCAIG, alleging breach of contract, negligence, and breach of fiduciary duty. NCAIG sent Mulberry a letter on June 26, 2012 notifying it of the lawsuits and of its intention to hold Mulberry responsible for losses caused to NCAIG. NCAIG proceeded to file third-party claims and cross-claims against Mulberry in several lawsuits.

By August 27, 2012, Maxum was aware of three claims filed by NCAIG against Mulberry, and undertook an investigation. Invoking Exclusion J.2, Maxum denied liability coverage to Mulberry for the third-party claims and cross-claims asserted by NCAIG in a letter dated October 8, 2012 on the basis that Mulberry had "knowledge and information relating to" the forged insurance before Mulberry's professional liability coverage began on March 1, 2012. The Policy was rescinded effective October 15, 2012. As NCAIG continued to assert third-party claims and cross-claims claims against Mulberry, Maxum continued denying coverage. On June 14, 2014, NCAIG obtained a default judgment against Mulberry in one of the underlying actions.

On March 20, 2013, Maxum filed suit in the United States District Court for the Southern District of Ohio against Mulberry, NCAIG, and others seeking rescission of the Policy or, in the alternative, a declaration that Maxum had no obligation to defend or indemnify Mulberry in any of several underlying lawsuits because Exclusion J.2 excluded those claims from coverage.

Mulberry did not defend this litigation, and a default judgment entered against it on May 29, 2013. Maxum and NCAIG then cross-moved for summary judgment. Maxum's motion for summary judgment asked the court only for a declaration that Exclusion J.2 of the Policy did not cover the claims in the underlying litigation. Maxum argued that the relevant provision contained unambiguous language excluding the underlying claims from coverage, since letters had been sent to Mulberry before the inception date of the policy on March 1, 2012. For its part, NCAIG argued that the language of the policy excluded only those damage claims of which Mulberry had subjective knowledge prior to the inception date of the Policy, and that Maxum had failed to show that Mulberry had known of any specific claims. It also contended that Maxum had breached its duty to defend Mulberry in the underlying litigation, and wrongfully denied coverage.

(Doc. 91, at 2–6).

This Court granted summary judgment in favor of Maxum on February 3, 2015. (Doc. 88). Defendant NCAIG appealed that ruling, and the Sixth Circuit Court of Appeals reversed on November 19, 2015. (Doc. 91). In its Order of reversal, the Sixth Circuit directed this Court to rule that the insurance policy issued by Maxum (the "Maxum Policy") covered the claims raised by NCAIG, including third-party claims and cross claims, as a matter of law. (*Id.* at 12). Following the Sixth Circuit's mandate, this Court entered an Order granting summary judgment in favor of NCAIG on March 2, 2016. (Doc. 99).

NCAIG filed a counterclaim against Maxum on May 11, 2016, raising a claim of breach of contract. (Doc. 100). On June 10, 2016, Maxum filed a motion for summary judgment on rescission, arguing that although the Court had ruled that the Maxum Policy under its terms provided coverage for the judgments against Mulberry, that policy was rescinded as a result of misrepresentations made by Mulberry on the policy application. (Doc. 102). On June 11, 2016, NCAIG filed a motion for summary judgment on its counterclaim. (Doc. 103).

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine

disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

## III. ANALYSIS

As an initial matter, the Sixth Circuit Court of Appeals has ruled that California law governs the interpretation of the Maxum Policy application and the Maxum Policy itself. (Doc. 91, at 8).

### A. Maxum is not entitled to rescission of its insurance policy.

Plaintiff's sole remaining argument against providing coverage in this case is that it should be entitled to rescind its insurance contract with Mulberry due to Mulberry's misrepresentations on the initial insurance application. California courts hold that rescission is appropriate where the insured conceals or misrepresents a material fact on the application for insurance, and rescission may be warranted even based on the insured's negligence or inadvertent failure to disclose a material fact. *See Nieto v. Blue Shield of Cal. Life & Health Ins. Co.*, 103 Cal. Rptr. 3d 906 (Cal. Ct. App. 2010); *LA Sound USA, Inc. v. St. Paul Fire & Marine Ins. Co.*, 67 Cal. Rptr. 3d 917 (Cal. Ct. App. 2007). Moreover, rescission is appropriate, despite the fact that an insured did not have actual intent to defraud the insurer. *See LA Sound*, 67 Cal. Rptr. 3d at 921. Information

regarding claims and potential claims is material information that the insured is required to disclose to the insurer, as the insurer has no means of learning such information, other than from the insured.

Plaintiff claims that Mulberry misrepresented the truth on its insurance application when it stated that it did not have "any knowledge of any potential errors or omissions claim(s)." (Doc. 102, at 14). Mulberry submitted an application for errors and omissions insurance to Plaintiff on January 31, 2012.[1] (*Id.* at 122–23). One of the questions in that application asks if the applicant has "any knowledge of any potential errors or omissions claim(s)." (*Id.* at 122). Mulberry indicated on the application that it did not have any such knowledge. (*Id.*).

Plaintiff argues that this assertion was false based on several communications received by Mulberry before Mulberry filled out its insurance application with Maxum. Mulberry sold NCAIG insurance policies allegedly approved by an insurance company called AIX Specialty Insurance Company ("AIX"). On September 19, 2011, AIX sent Mulberry a cease and desist letter by overnight mail, advising that "[n]o business produced by Mulberry Insurance Services, Inc. has been submitted, accepted, reviewed, underwritten, bound or issued by [AIX], and any proposals that were presented to prospective insureds naming [AIX] as the insuring company were done in error and without the knowledge or consent of [AIX]." (Doc. 102, at 172). Also in September 2011, AIX contacted NCAIG and advised that AIX had not approved the risk for

[1] The application was filled out by Tigran Pogosyan, Mulberry's principal. There is no dispute that Mr. Pogosyan had authority to act on Mulberry's behalf, and so for simplicity, this Order refers to all actions taken on Mulberry's behalf as performed by Mulberry itself.

NCAIG's clients. Immediately after that contact, NCAIG informed Mulberry of what AIX had stated regarding Mulberry's lack of authority to issue policies on behalf of AIX. (*Id.* at 41).

Mulberry also received additional communications after filling out the insurance application, but before the March 1, 2012 implementation date of the policy, that Plaintiff claims made Mulberry aware of potential claims. On February 10, 2012, Swiss Re, the parent company of AIX, sent a cease and desist letter to Mulberry advising that pursuant to its investigation with the Illinois Department of Insurance, it appeared that Mulberry had issued unauthorized binders for policies on behalf of Swiss Re entities. (Doc. 102, at 231–32). On February 17, 2012, AIX sent a cease and desist letter to Mulberry advising that it was aware that Mulberry continued to use the AIX name in the solicitation and marketing of insurance products and that AIX would be referring the matter to the fraud units of all appropriate insurance departments. (*Id.* at 175). On February 22, 2012, the Illinois Department of Insurance sent a letter to Mulberry advising that Mulberry had issued binders of insurance that may not constitute legally valid insurance. (*Id.* at 234).

Ultimately, the question of which party prevails on summary judgment is dependent upon whether the communications Mulberry received from AIX, Swiss Re, and the Illinois Department of Insurance gave Mulberry "any knowledge of any potential errors or omissions claims." This issue has already been determined by both this Court and by the Sixth Circuit. The Sixth Circuit Court of Appeals evaluated Plaintiff's claim that coverage under the insurance policy was voided because Mulberry had triggered exclusion J.2 of the insurance contract, which read:

This insurance does not apply to:

> J. Any "claim" arising out of or resulting from any "wrongful act" or "personal/advertising injury",
>
> (1) Disclosed in your application of insurance or any accompanying documents provided to us; or
>
> (2) You had knowledge of or information related to, prior to the first inception date of the continuous claims-made coverage with us, and which may result in a "claim".

(Doc. 102, at 144–45). Plaintiff argued that the communications from AIX, Swiss Re, and the Illinois Department of Insurance constituted knowledge of wrongful acts that "may result in a claim." Defendant argued that this exclusion would only apply if it could be shown that Mulberry subjectively believed, prior to the inception of the insurance policy, that these communications would result in legal claims. The Sixth Circuit Court of Appeals agreed with Defendant, holding that, due to the presumption of coverage, ambiguous contract language in an insurance policy such as this should be construed in favor of the insured. (Doc, 91, at 9).

Defendant argues that "the language in the insurance application [is] materially different from the language of exclusion J.2 in the insurance policy[.]" (Doc. 108, at 6). This is incorrect. The insurance application requires the applicant to disclose "any knowledge of any potential errors or omissions claim(s)." (Doc. 102, at 122). The exclusion in the Maxum Policy itself holds that coverage does not apply to "any 'claim' arising from any 'wrongful act' or 'personal/advertising injury' . . . you had knowledge of or information related to . . . and which may result in a 'claim'." (*Id.* at 145). The Sixth Circuit Court of Appeals has already held as a matter of law that the

communications at issue did not give Mulberry knowledge of any "wrongful act" that "may result in a claim." This Court does not see how a communication could fail to put one on notice of a "wrongful act that may result in a claim" yet somehow put one on notice of a "potential claim." Those terms have the same meaning.

Plaintiff also argues that even if the language in the insurance application and the policy exclusion are functionally identical, summary judgment on the issue of rescission should be granted in its favor because the standards for evaluating rescission and the application of a policy exclusion are different. The Sixth Circuit Court of Appeals held that a subjective standard governed the application of the exclusion in the Maxum Policy (Doc. 91, at 10–11), but Plaintiff argues that an objective standard should govern this Court's review of the issue of rescission. In other words, Plaintiff argues that while it had to demonstrate that Mulberry subjectively thought that the communications from AIX, Swiss Re, and the Illinois Department of Insurance would lead to a legal claim for the policy exclusion to apply, it only needs to show that an objectively reasonable person would consider those same communications "potential claims" for the policy to be rescinded.

This argument is without merit. In support, Maxum cites to *Oregon Mutual Ins. Co. v. Victorville Speedwash, Inc.*, 2015 WL 12656274 (C.D. Cal. 2015). However, *Victorville Speedwash* addressed application language that was entirely different from the application language utilized by Maxum in this case. In *Victorville Speedwash*, the insurance application asked the following two questions:

- Has the firm received any employment-related lawsuits, negotiated settlements, grievances, EEOC or other administrative proceedings from any municipal, state or federal regulatory authorities or any other governmental entities?

- Are you aware of any facts or circumstances, which you reasonably believe, may result in employment-related practices claims being made against the applicant?

*Victorville Speedwash*, 2015 U.S. Dist. LEXIS 88109, at *6-7 (emphasis added). By including the term "reasonably" in the application language, the application in *Victorville Speedwash* explicitly required an objective standard as to what a reasonable person should believe may result in a claim.

In contrast, the policy application at issue in this case did not contain any language indicative of an objective standard. Courts applying California law have determined in similar circumstances that the issue of whether an objective or subjective standard is used to evaluate a rescission claim is based upon whether the policy application at issue contained language alerting the applicant to the presence of an objective standard. *Compare Walbrook Ins. Co. v. Spiegel*, 1993 WL 580759, at *6–7 (C.D. Cal. 1993) (applying subjective standard to application for liability insurance based on a lack of clear language stating otherwise), *with Federal Ins. Co. v. Curon Medical, Inc.*, 2004 WL 2418318, at *5 (N.D. Cal. 2004) (applying objective standard to application for liability insurance where application required divulgence of "any known incidents or circumstances that might *reasonably* be expected to give rise to a claim") (emphasis

added).[2]

Because there is no language in the Maxum insurance application that allows the Court to determine whether the application was designed to hold an applicant to an objective standard, the application is ambiguous as to what standard should be used in interpreting whether rescission is warranted. As the Sixth Circuit Court of Appeals explained in its previous ruling on this case, California law requires that ambiguities in insurance contracts, and insurance applications be construed in favor of providing coverage. *Metropolitan Life Ins. v. Devore*, 424 P. 2d 321, 325 (Cal. 1967). Therefore, the Court will apply a subjective standard, meaning that Plaintiff can only prevail if it can demonstrate that Mulberry subjectively believed that the communications received from AIX, Swiss Re, and the Illinois Department of Insurance were likely to lead to legal claims.

Plaintiff argues that "[a]t minimum, the arguments presented by NCAIG create an issue of disputed fact as to whether Mulberry subjectively had any knowledge of any potential errors or omissions claims." (Doc. 108, at 11 n. 30). However, the Sixth Circuit has already ruled that there is no issue of disputed fact as to whether Mulberry knew of any claims as required by exception J.2 to the insurance policy. (Doc. 91, at 11–12). The language in the insurance application and the language in the insurance policy

---

[2] Plaintiff claims that *Walbrook* and *Curon Medical* are "inapposite as [they rely] on authority limited to the life insurance context." (Doc. 108, at 5.) However, the facts of *Walbrook* and *Curon Medical* revolve around liability insurance policies similar to the Maxum Policy. Plaintiff therefore implies, without directly stating, that *Walbrook* and *Curon Medical* were wrongly decided because the only instance in which a reviewing court can use analysis of contractual language to determine whether an insurance applicant should be held to an objective or subjective standard of knowledge is in the context of life insurance. The Court finds Plaintiff's assertion to be without merit and applies the reasoning of *Walbrook* and *Curon Medical* to evaluate the insurance application in this case.

exception are functionally identical in their requirements that the applicant/policyholder disclose all potential claims/acts that may result in a claim. Therefore, the Sixth Circuit's ruling is applicable to the equivalent issue in this case.

Accordingly, Defendant's motion for summary judgment is granted on the issue of rescission.

**B. Maxum breached its contract with Mulberry.**

The Maxum Policy imposed the following obligations upon Maxum as the insurer:

> [Maxum] will pay those sums that an 'insured' becomes legally obligated to pay as 'damages' because of a 'wrongful act' in the rendering of or failure to render 'professional services' by any 'insured' or by any person for whose 'wrongful acts' an 'insured' is legally responsible for. [Maxum] will have the right and duty to defend any 'insured' against any 'suit' seeking those 'damages.'

(Doc. 102, at 143). Maxum has violated these obligations by 1) refusing to defend Mulberry in the suit brought by NCAIG and 2) refusing to pay the damages award legally obtained against Mulberry in a default judgment in favor of NCAIG. Therefore, Maxum has breached its contract with Mulberry as a matter of law. NCAIG, as a creditor of Mulberry via default judgment (*see* Doc. 85), was a third-party beneficiary under the Maxum Policy, and accordingly has standing to recover damages from Maxum for its breach.

Accordingly, the Court grants summary judgment in favor of NCAIG on its counterclaim for breach of third-party beneficiary contract. (Doc. 100).

**C. The scope of coverage of the Maxum insurance policy has already been determined by the Court.**

Plaintiff's motion for summary judgment on rescission argues that even if coverage is mandated, that coverage should only be limited to six claims that were identified by Defendant in a letter to Plaintiff dated October 25, 2012. In particular, Plaintiff argues that it should not be liable for the default judgment obtained against Mulberry in *AmWins Brokerage of Texas, Inc. v. NCAIG, et al.*, S.D. Ohio Case No. 1:12-cv-358 (June 2, 2014). Plaintiff's argument is not well taken. The Court already ruled upon the scope of the coverage of the insurance policy in its Order granting Defendant's motion for summary judgment issued March 2, 2016. (Doc. 99). That Order declared, in accordance with the mandate of the Sixth Circuit Court of Appeals, that "the third-party claims and cross-claims asserted by the NCAIG are covered by the Maxum Policy[.]" At the time of that decision (as well as the Sixth Circuit's ruling), NCAIG had asserted all the claims currently being asserted, including the *AmWins* judgment. (*See* Doc. 85). There is no reason for this settled issue to be re-litigated.

Accordingly, Plaintiff is liable under the Maxum policy for the default judgments awarded against Mulberry in each case cited by Defendant. Because Maxum is liable for multiple claims against Mulberry, the $2,000,000 multiple claims limit of the Maxum Policy (*see* Doc. 102, at 140) is the appropriate limit.

## IV. CONCLUSION

In accordance with above,

1) Plaintiff's motion for summary judgment on rescission (Doc. 102) is **DENIED**;
2) Defendant's motion for summary judgment (Doc. 103) is **GRANTED**;
3) Plaintiff Maxum Indemnity Company is liable for the default judgment obtained against Mulberry in *AmWins Brokerage of Texas, Inc. v. NCAIG, et al.*, S.D. Ohio Case No. 1:12-cv-358 (June 2, 2014) up to the Maxum Policy's multiple claims limit of $2,000,000.

**IT IS SO ORDERED.**

Date: 11/9/16

*s/ Timothy S. Black*
Timothy S. Black
United States District Judge